UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAELA O. KARLE, <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL ONE BANK, DISCOVER FINANCIAL SERVICES, FIRST USA UNITED SECURITY BANK, CHASE, and PROGRESSIVE DIRECT INSURANCE CO. <br><br> Defendants. | No. 14-CV-30062-LTS |

**REPORT AND RECOMMENDATION REGARDING ORDER TO SHOW CAUSE
(Dkt. No. 150) AND MOTIONS FOR SUMMARY JUDGMENT BY DEFENDANT
PROGRESSIVE DIRECT INSURANCE COMPANY (Dkt. No. 125),
DEFENDANT CAPITAL ONE BANK (Dkt. No. 130),
AND PLAINTIFF MICHAELA O. KARLE (Dkt. No. 134)**

CABELL, U.S.M.J.

This case arises innocently enough from invitations to apply for credit and insurance

coverage.  Defendants Capital One Bank (USA) N.A. ("Capital One") and Progressive Direct

Insurance ("Progressive") sent plaintiff Michaela Karle (Karle or "the plaintiff") credit card and

insurance offers, respectively, after checking her credit and determining she might be a good

client.  Karle, representing herself, contends that the defendants violated federal and state law

because they had no right to check her credit where she did not apply for credit or insurance from

either defendant.  The defendants counter that they pulled the plaintiff's credit in order to extend

firm offers of credit and insurance, a statutorily permitted purpose, and they have moved for

summary judgment on all counts.  (Dkt. Nos. 125, 130).  The plaintiff in response filed a cross

motion for summary judgment. (Dkt. No. 134). After doing so, though, the plaintiff stopped participating in the case, and she has failed to respond to court issuances or to appear as directed for scheduled hearings. This failure to prosecute warrants dismissal on its own, but I also conclude on the merits that the defendants did not violate federal or state law in sending business solicitations to the plaintiff. Accordingly, I recommend that the defendants' summary judgment motions be allowed, that the plaintiff's motion for summary judgment be denied, and that the complaint be dismissed both for failure to prosecute and on the merits.

## I.   BACKGROUND

### A. The Second Amended Complaint

The original complaint named five defendants but Karle dismissed her claims against all but two defendants, Capital One and Progressive. The second amended complaint is the operative complaint and it alleges five claims against the defendants. (Dkt. No. 72). Progressive obtained dismissal of Counts I, III, IV and V, leaving only Count II pending against it. (Dkt. No. 91). Capital One did not file a motion to dismiss; as a result, all five counts of the second amended complaint remain pending against it. (Dkt. No. 75).

The plaintiff contends that the defendants improperly caused credit inquiries to be conducted on her on more than one occasion, and that these credit checks constitute violations of two federal statutes and the state consumer protection statute.

- Count I alleges a violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p by making false representations to obtain information about a consumer.

- Count II alleges a willful violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681.

- Count III alleges a violation of M.G.L. c. 93A on the ground that a violation of the FDCPA and FCRA constitutes an "automatic violation" of the state consumer protection statute.

- Count IV alleges a negligent violation of the FCRA.

- Count V alleges a knowing and willful violation of the FCRA.

## B. **Relevant Facts**[1]

The plaintiff has never had an account with Capital One.  Between July 2012 and February 2014, a data broker hired by Capital One pulled the plaintiff's credit 27 times.  After each credit pull, Capital One sent the plaintiff a pre-approved credit offer.  (Dkt. No. 132 – Capital One's Statement of Facts).  The plaintiff does not recall whether she received the credit offers.  In any event, she never applied for an account with Capital One.  (Dkt. No. 128-1).

Similarly, the plaintiff has never purchased insurance from Progressive.  In 2013, Progressive pulled the plaintiff's credit on two occasions.  After each credit pull, Progressive sent the plaintiff a prescreened insurance offer.  The plaintiff never applied for insurance through Progressive.  (Dkt. No. 127 – Progressive's Statement of Facts).

The plaintiff has not submitted any evidence to suggest that the defendants did not actually send her pre-approved credit card offers and prescreened insurance offers, or that the defendants' offers were a sham.  To be sure, the plaintiff has submitted an affidavit that states that she "never received a firm offer of Insurance from the defendant Progressive Direct Insurance Company or Capital One."  (Dkt. No. 134-3).  However, at her deposition, the plaintiff testified that she did not recall whether she had ever received credit card offers from Capital One.  She stated that even if she had, she would not have considered a credit card offer to be a firm offer of credit within the meaning of the pertinent federal statutes.  In her opinion, only a

---

[1] Unless otherwise noted, the facts are presented in a light most favorable to the plaintiff and are taken from the parties' Concise Statements of Material Fact filed in connection with the summary judgment motion.  The Court has disregarded factual assertions not supported by admissible evidence such as, for example, those based solely on hearsay.

transaction initiated by the consumer can constitute a firm offer of credit.  (Dkt. No. 128-1 at p. 10).  It thus would appear that the premise of the plaintiff's lawsuit is her contention that unsolicited credit offers cannot constitute a "firm offer of credit" within the meaning of the pertinent statutes.

## II.   THE PLAINTIFF'S FAILURE TO PROSECUTE

As federal court practitioners know, the federal judiciary uses an electronic, online comprehensive case management system called "Case Management/Electronic Case Files, referred to generally as CM/ECF.  Among other things, CM/ECF allows registered users to electronically file documents with the court.  CM/ECF also allows the court to issue orders and notices, and all registered users connected to the case receive a copy of the issuance or order via electronic mail.  It is undisputed that the plaintiff has at all relevant times been a registered CM/ECF user in connection with this case; indeed, the docket is replete with entries reflecting plaintiff-side filings.  As such, the docket reflects that the plaintiff initiated this matter by way of complaint on April 15, 2014, and actively prosecuted the matter over the next two years, through the filing of her summary judgment motion in July of 2016.  (*See* Dkt. Nos. 1-140).

Then, on October 14, 2016, the Court gave notice that it would hold a hearing on the three pending summary judgment motions.  (Dkt. No. 143).  At the defendants' request, the hearing was continued to November 2, 2016.  (Dkt. Nos. 144-146).  On November 2, 2016, the Court convened the motion hearing as scheduled.  The defendants appeared but the plaintiff did not.  After waiting for approximately 30 minutes, the Court elected to reschedule the hearing to November 8, 2016, and give the plaintiff a second opportunity to appear.  (Dkt. No. 147).  The Court issued a notice that explicitly noted the plaintiff's absence, and advised the plaintiff that the Court would proceed with the hearing even if she failed anew to appear: "*Pro Se Plaintiff*

*Michaela Karle is advised that this is the second time[2] she has failed to appear for a hearing without the court's permission.  Ms. Karle is expected to appear at this rescheduled motion hearing but if she fails to appear the court will go forward with the hearing in her absence.* (Dkt. No. 148).

The plaintiff did not appear at the rescheduled November 8, 2016 hearing.  As forewarned, the Court heard argument without her and took the matter under advisement.  Even then, though, the Court extended the plaintiff the opportunity to reengage and explain her inaction, issuing that same day an Order to Show Cause why the case should not be dismissed for her failure to prosecute.  (Dkt. No. 150).  The Court set a deadline to respond of November 18, 2016.  The plaintiff did not file a response or otherwise contact the Court by that date.

Local Rule 41.1 permits the Court to *sua sponte* issue an order to show cause where a plaintiff has ceased participating in a matter, and provides that the failure to respond to the order to show cause "shall be grounds for the dismissal of the action."  D. Mass. L.R. 41.1; *see also Link v. Wabash Railroad Co.*, 370 U.S. 626 (1962) (district court had inherent authority to dismiss a case for failure to prosecute and does not abuse its discretion in dismissing the case based, in part, on plaintiff's failure to appear at pre-trial conference).

Dismissal is appropriate here.  As noted, the plaintiff failed to appear at two separate hearings on the parties' motions for summary judgment, and failed to respond to an order to show cause seeking an explanation.  (Dkt. Nos. 147, 149, 150).  In light of the plaintiff's prior participation up to the filing of the summary judgment motions, the Court can only infer that the plaintiff has reevaluated her options in light of the defendants' arguments, and made a conscious decision to stop prosecuting her claims.  Regardless of her reasons, the plaintiff's failure to

---

[2] The plaintiff also failed to appear at the scheduling conference on September 11, 2015.  (Dkt. No. 106)

respond to the Court's order to show cause justifies dismissal pursuant to Local Rule 41.1.  The

Court accordingly recommends that the case be dismissed.

### III.   THE SUMMARY JUDGMENT MOTIONS

Independently, the defendants are entitled to summary judgment.[3]  As discussed briefly

below, federal law permits certain entities to inquire about the credit ratings of individuals where

the entity goes on to extend a "firm offer of credit" to the individual.  The plaintiff's lawsuit

appears to be based on the premise that the credit card or insurance coverage offers the

defendants sent to the plaintiff did not constitute firm offers of credit because the plaintiff did not

initiate the contact.  That understanding is not correct.  Rather, solicitations like those at issue

here, supported by a credit check demonstrating the prospective client's creditworthiness,

amount to firm offers of credit, and the defendants did not violate federal or state law when they

checked the plaintiff's credit as a prelude to sending them.

### A.  Count II, the FCRA claim against Capital One and Progressive

The purpose of the FCRA is to promote the accuracy, fairness, and privacy of consumer

information contained in the files of consumer reporting agencies.  To that end, the FCRA

regulates the collection, dissemination, and use of consumer credit information.  *See* 15 U.S.C. §

1681 *et seq*.  "An entity may gain access to an individual's consumer report only with the written

consent of the individual, unless the consumer report is to be used for certain 'permissible

purposes,' in which case written consent is not required."  *Dixon v. Shamrock Fin. Corp.*, 522

---

[3]Under well-established law, the role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Johnson v. Gordon*, 409 F.3d 12, 16–17 (1st Cir. 2005).  The burden is on the moving party to show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.

F.3d 76, 77–78 (1st Cir. 2008); 15 U.S.C. § 1681b(f)(1) ("A person shall not use or obtain a consumer report for any purpose unless-- (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.").  Pulling a credit report in order to extend a "firm offer of credit or insurance" is one such permissible purpose.  15 U.S.C. § 1681b(c)(1). The FCRA defines a "firm offer" as:

> any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on [specific credit worthiness criteria, identity verification and/or the posting of collateral].

15 U.S.C. § 1681a(l).  "To decide whether a lender has complied with FCRA, 'a court need only determine whether the four corners of the offer satisfy the statutory definition ..., and whether the terms are honored when consumers accept.'"  *Dixon v. Shamrock Fin. Corp.*, 482 F. Supp. 2d 172, 175 (D. Mass. 2007) (citing *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006)). Whether the consumer was actually interested in or likely to accept the credit offer is irrelevant. *See Cavin v. Home Loan Center, Inc.*, 531 F.3d 526 (7th Cir. 2008) (fact that most consumers would not apply for mortgage that defendant offered and therefore minimal number of consumers actually obtained mortgage did not establish absence of firm offer of credit).

Here, both Capital One and Progressive have submitted evidence that they actually did send the plaintiff firm credit or prescreened insurance offers after pulling her credit.  (Dkt. Nos. 127 and 132).  In the face of this evidence, the plaintiff might still avoid summary judgment by putting on some evidence to show that the defendants' firm offers were shams "in the sense that [they] would not have been honored by [the defendants] if [the plaintiff] had accepted."  *Dixon*,

482 F. Supp. 2d at 176-77.  The plaintiff has not done so.  Instead, she argues, incorrectly, that a "firm offer of credit" is limited to the plaintiff "wanting to have credit and asking for [it]," and an unsolicited credit card (or insurance) offer can thus never constitute a firm offer of credit. (Dkt. No. 128-1 at p. 10).  To that extent, the plaintiff does not dispute the defendants' evidence showing that offers were extended to her following each credit inquiry.  These offers constituted firm offers of credit, regardless of whether the plaintiff solicited them.  *Sullivan v. Greenwood Credit Union*, 520 F.3d 70 (1st Cir. 2008) (holding that unsolicited mailing was a firm offer of credit where creditor would not deny credit to consumer if consumer met creditor's pre-selection criteria); *Poehl v. Countrywide Home Loans, Inc.*, 464 F. Supp. 2d 882, 884 (E.D. Mo. 2006) ("Congress allowed lenders such as the defendant to access credit reports for the purpose of making unsolicited mailings to consumers, so long as the lender actually offered the consumer something, that is, so long as the lender made a 'firm offer of credit.'").  Summary judgment should be entered in the defendants' favor on Count II.

### B.  Count I (FDCPA), Count III (93A), Count IV (FCRA) and Count V (FCRA) against Capital One

On May 28, 2015, the Court partially granted Progressive's motion to dismiss on the ground that Counts I, III, IV and V of the second amended complaint fail to state a claim.  The legal basis for this decision is fully set forth in the Court's order and is incorporated here without repetition.  (*See* Dkt. No. 91).

Capital One at the time elected not to file a motion to dismiss and, instead, answered the second amended complaint.  As a result, Counts I, III, IV and V remain pending against Capital One.  But, having reviewed the second amended complaint and the parties' summary judgment papers, it is apparent that Counts I, III, IV and V as they relate to Capital One suffer from the

same deficiencies identified in the  May 28, 2015 order on Progressive's motion to dismiss. Counts I, III, IV and V should therefore be dismissed for the same reasons set forth in that order.

### IV.    CONCLUSION

For the foregoing reasons, it is recommended that the summary judgment motions of defendants Progressive Direct Insurance (Dkt. No.125) and Capital One Bank (USA), N.A. (Dkt. No. 130) be ALLOWED.  It is further recommended that the plaintiff's motion for summary judgment be DENIED (Dkt. No. 134).  Independently, dismissal is appropriate pursuant to Local Rule 41.1 because the plaintiff appears to have abandoned prosecution of the case and did not respond to the Court's November 8, 2016 order to show cause why the case should not be dismissed for failure to prosecute.  (Dkt. No. 150).

The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d

603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  December 16, 2016